Hillsborough, }
June 6, 1916. }

### CYPRIAN SOUCY v. MANCHESTER.

### ENDÉE C. NOURY v. SAME.

CASE, for negligently constructing and maintaining a sewer. The two actions were tried together by jury and a verdict was rendered for the plaintiff in each case.

At the close of the plaintiffs' evidence the defendants' motions for an order of nonsuit in each case were denied subject to their exception.   Transferred from the May term, 1915, of the superior court, by *Branch*, J.   The facts appear in the opinion.

*Albert Terrien* and *Doyle & Lucier*, for the plaintiffs.

*Charles D. Barnard* and *Jones, Warren, Wilson & Manning (Mr. Warren* orally), for the defendants.

PARSONS, C. J.   In September, 1913, the plaintiff Soucy, was the owner of a building upon Dubuque street in the city of Manchester, recently erected by him.   In the construction of the cellar wall upon the line of the street the plaintiff, with the permission of the city, excavated within the limits of the sidewalk, subsequently filling in

against the cellar wall with sand. The wall was not pointed upon the outside and there was conflict as to whether it was pointed on the inside. Early in September, during a heavy shower, water and sand washed through the wall into the cellar. The city had constructed gutters upon Dubuque street and upon Amory, an intersecting street, and catch-basins connecting with sewers, so as to collect the rain water and carry it off under ground. No claim is made for injury from the shower above mentioned, but September 22, 1913, during a very heavy shower, water and sand in large quantity washed through the cellar wall into the plaintiff's cellar causing the damage complained of to the building of the plaintiff Soucy and to the goods of his tenant, the plaintiff Noury. The plaintiffs claimed that on both occasions the inflow to the cellar was due to the fact that the catch-basins upon Dubuque street were plugged up so that the water did not flow off through them to the sewers. The defendants claimed the trouble was occasioned by obstruction in the gutters caused by the plaintiff Soucy in erecting his building and in removing the sand from the cellar.

The jury were instructed without exception or objection that there was no evidence of negligence in the construction of the sewer system, that there was a total failure of proof that an unsuitable or insufficient sewer was put in. This left as the only ground of recovery negligence of the city in caring for the installation. Both the plaintiffs' testified that during the storm of September 22 and the earlier one of the same month the water flowed over and not down into the catch-basins, from which they inferred the system was plugged as they testified, but there was no evidence as to the reason why this properly constructed system failed to operate.

There was evidence of notice to the city of the first washout and the only ground of negligence in maintenance upon which the case was submitted to the jury was whether the city, having notice of conditions after the first shower, did nothing then to restore the system to working order, *i.e.*, failed to then clean out the catch-basins. Upon this question the defendants' evidence was that after the first complaint was made the workmen of the city made the necessary repair and cleaned out the basins. The jury were properly instructed that if they found the defendants' claim to be true the plaintiffs could not maintain their suit. So that the only question material upon the question of nonsuit is whether there was evidence not merely contradicting the evidence of the defendants but sufficient of itself to authorize a finding that the city did nothing

to put the catch-basins in order after the first shower. The plaintiff Noury testified that on the first occasion he notified the city authorities by telephone that there was a washout and that a Mr. Manier came to look at it; that nothing was done so far as he knew but that he was in the store and the repair was not a part of his business. The plaintiff Soucy testified that about eight days before September 22 he "sent for Mr. Manier to have the cesspool [catch-basin] cleaned out and he called, and he had no tools at the time to work with. He called on me and he wanted to get a wheelbarrow and a shovel. I didn't have any wheelbarrow, so he went and called on the other city employees that he knew, at the cesspool, and he had the city employees that filled up the hole what they had picked up from the cesspool when he had that hole filled up with mud, and he took some sand and sprinkled over it." This is not very clear but seems to imply that material taken from the catch-basin was used to fill the hole caused by the sand washing through the wall into the cellar. Whether this is a correct construction of the evidence or not, the testimony will not bear the construction that the city did nothing to remedy the alleged trouble. There was no evidence that the catch-basins were in fact filled with sand September 22, or that on any other occasion, before or since the dates of which the plaintiffs testified, the system failed to carry off the water.

The burden of proving negligence rested on the plaintiffs, and, the only ground of negligence alleged being failure of the defendants to act, the plaintiffs were bound to furnish affirmative evidence upon the issue. This issue is not met by evidence of want of knowledge on the part of one plaintiff accompanied by explanatory suggestion as to the cause of his ignorance, and testimony from the other, tending to show the city did what the plaintiffs were bound to prove they did not do. The catch-basins, it appeared, were constructed along the gutter line from six to seven and a half feet deep, three and a half to four feet inside diameter with bottom and sides of brick or concrete. About two feet from the bottom, the catch-basin is connected with the sewer by an eight inch pipe. There is an opening in the covering over which is placed an iron grating to admit the water. The obvious purpose of the basins is to furnish an opportunity for the sand or soil flowing with the surface water to settle and so prevent its being carried into the sewer. This accumulation of sand or soil must be removed from time to time and, if allowed to accumulate until the pipe to the

sewer is covered, will, as the witnesses expressed it, plug the catch-basin so that no water will pass.   The plaintiffs, standing upon the proposition that the catch-basins were plugged at the time of the earlier shower and alleging negligence in the city from failure to clean them out before the shower of September 22, assumed the burden of proving such negligence.   Whether they were in fact filled with sand September 22 was a fact easily susceptible of proof.   The defendants' evidence was that an examination made immediately after September 22 showed the catch-basins in proper condition while the plaintiffs offered no evidence whatever except their statement that the water did not pass off through them.   There was evidence, and it is perhaps matter of common knowledge, that at times during heavy showers the litter of the street will wash over the grating covering openings into water channels provided beneath the street, and form a sort of blanket over the opening which will prevent the water entering.   Whether this is the explanation of the alleged failure of the catch-basins in this instance or not is immaterial; the plaintiffs, relying upon the failure of the defendants to correct a claimed defect in the condition of the system as negligence, cannot recover without offering some proof in support of such claim.

As the plaintiffs failed to offer proof of improper construction, or in support of the only ground of negligence in maintenance claimed, the order of nonsuit should have been made.

*Exception sustained: verdict and judgment for the defendants.*

All concurred.